UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CRAIG GAETANI, | * | |
| Plaintiff, | * | |
| v. | * | |
|  | * | Civil Action No. 14-30057-MGM |
| DAVID J HADLEY, SUSAN E MCMAHON, THE COMMONWEALTH OF MASSACHUSETTS, and THE TRIAL COURT OF THE COMMONWEALTH | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER REGARDING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN PART
(Dkt. No. 12)

January 8, 2015

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

According to Craig Gaetani ("Plaintiff"), after a misunderstanding at the clerk-magistrate's office at the Berkshire District Court, he attempted to return to the active court session to clarify the judge's prior order. At this point, Massachusetts Trial Court Officers Susan McMahon ("McMahon") and David Hadley ("Hadley") (together "Defendants") physically seized him, resulting in a torn rotator cuff and tendons.

On March 28, 2014, Plaintiff filed a complaint against Defendants, the Commonwealth of Massachusetts, and the Trial Court of the Commonwealth, seeking relief under 42 U.S.C. § 1983 for violations of his First Amendment rights (Counts 1 and 2), his Fourth Amendment rights (Count 3), and his Fourteenth Amendment rights (Count 4); as well as a 42 U.S.C. § 1985 claim that Defendants conspired to deprive him of his civil rights (Count 5). He also alleged that Defendants

violated his rights under the Massachusetts Civil Rights Act ("MCRA") (Count 6), the Massachusetts Torts Claims Act (Count 7) and that Defendants committed an assault and battery against him (Count 8). Lastly, Plaintiff claims that he is entitled to "Declaratory and Injunctive Relief" against the Trial Court (Count 9).

On July 23, 2014, Defendants filed a motion to dismiss Plaintiff's complaint, in part, for a failure to state a claim upon which relief can be granted.[1] Plaintiff subsequently conceded all of his claims for monetary relief against the Commonwealth and the Trial Court (Dkt. No. 17, Pltf. Mem. 4-5), his Massachusetts Torts Claims Act claim on procedural grounds (Dkt. No. 16, Pltf. Opp. 2-3), and his 42 U.S.C. § 1985 conspiracy claim against Defendants. (Dkt. No. 16, Pltf. Opp. 2.) The hearing on the remaining portions of Defendants' motion took place on October 2, 2014.

The court grants Defendants' motion to dismiss in part, and denies it in part.

## II. STANDARD

To survive a 12(b)(6) motion to dismiss, a complaint must allege facts that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, the factual allegations in the complaint must "nudge[] [the] claims across the line from conceivable to plausible." Id. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). "Determining whether a complaint states a plausible claim for relief" is a context-specific task that requires "the reviewing court to draw on its judicial experience and common sense." Id. at 679.

Courts are not required to accept as true allegations in a complaint that are legal conclusions. Id. at 678. However, "[w]hen there are well-pleaded factual allegations, a court should assume their

---

[1] The court notes that, in their memorandum filed in support of their motion, Defendants have explicitly noted that they "reserve for summary judgment" their arguments based on "quasi-judicial immunity and qualified immunity." (Dkt. No. 13, Deft. Mem. 5-6.) Therefore, the court will not address these arguments in this opinion.

2

veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. Therefore, in assessing a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the plaintiff. See San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá, 687 F.3d 465, 471 (1st Cir. 2012).

### III. PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff attended the civil session of the Berkshire District Court to pursue a claim against a party who was in jail at the time. (Dkt. No. 1, Comp. ¶ 10, 11.) When this party did not appear in court because he was incarcerated, the judge instructed Plaintiff to go to the clerk-magistrate's office to procure a "Writ of Habeas Corpus" in order to compel that party's appearance. (Dkt. No. 1, Comp. ¶ 11, 12.) A clerk-magistrate[2] informed Plaintiff that he had misunderstood the judge's order, and that the judge had actually wanted a "capias" to issue. (Dkt. No. 1, Comp. ¶ 14.) Plaintiff "disagreed" with the Clerk-Magistrate. (Dkt. No. 1, Comp. ¶ 15.) Plaintiff then attempted to go back into the courtroom so that he could ask the judge to "clarify his order." (Dkt. No. 1, Comp. ¶ 16.)

As Plaintiff neared the courtroom, Defendants "violently detained" him. (Dkt. No. 1, Comp. ¶ 17.) Hadley twisted Plaintiff's right arm up behind his back, tearing his rotator cuff and tendons, while McMahon held Plaintiff by his left arm. (Dkt. No. 1, Comp. ¶ 18.) McMahon helped to restrain Plaintiff while Hadley twisted his arm, and she did nothing to discourage Hadley from doing so. (Dkt. No. 1, Comp. ¶ 20.) As a result of Defendants' actions, Plaintiff suffered serious physical injury, was prevented from "transacting his business," incurred the costs of medical care and treatment, and "suffered great emotional distress and suffered other divers [sic] injuries." (Dkt. No. 1, Comp. ¶ 24.)

---

[2] In his complaint, Plaintiff identifies this individual as a "public employee at the Clerk-Magistrate's office." (Dkt. No. 1, Comp. ¶ 14.)

3

# IV. ANALYSIS OF DEFENDANTS' MOTION TO DISMISS

## A. Official/Individual Capacity

In their memorandum, "Defendants argue that Plaintiff's claims for damages…must be dismissed…because Plaintiff brought Counts I-VI against Hadley and McMahon in their official capacities." (Dkt. No. 13, Deft. Mem. 11.) The court disagrees with Defendants' interpretation of Plaintiff's complaint.

"In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both." Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985). In these circumstances, courts "examine the substance of the pleadings and the course of proceedings in order to determine whether the suit is for individual or official liability." Powell v. Alexander, 391 F.3d 1, 22 (1st Cir. 2004) (internal quotations and citation omitted). "Throughout, the underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." Id. (quoting Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995)).

Even assuming Plaintiff originally intended to sue Defendants in their official capacities, the complaint contains ample evidence that Plaintiff intended to sue Defendants in their individual capacities as well. For example, Plaintiff's complaint contains a prayer for punitive damages, which can "only be brought against defendant governmental officials who were sued in their individual capacities." Id. at 23 (inferring from the existence of a prayer for punitive damages that the plaintiff intended to sue the defendant in his individual capacity). Additionally, Plaintiff named Defendants separately from the Commonwealth or the Trial Court in his original complaint. (Dkt. No. 1, Compl.) Plaintiff supports this interpretation by stating in his responsive memorandum that "this court should read the complaint and its requests for relief as asking for damages against Defendants Hadley and McMahon (the individual defendants) only." (Dkt. No. 17, Pltf. Mem. 4-5.)

Defendants erroneously interpret Plaintiff's frequently-used phrase, "under color of state law," to essentially mean that Plaintiff's complaint indicates that he intended to sue Defendants only in their official capacities. In contrast to Defendants' interpretation of this phrase, Black's Law Dictionary defines "color of law" to mean "[t]he appearance or semblance, <u>without the substance</u>, of a legal right." See COLOR OF LAW, Black's Law Dictionary (9th ed. 2009) (emphasis added); see also Powell, 391 F.3d at 24 ("It simply 'does not follow that every time a public official acts under color of state law, the suit must of necessity be one against the official in his or her official capacity.'" (quoting Melo v. Hafer, 912 F.2d 628, 636 (3d Cir. 1990)). Under the standard applied at this stage, the court interprets the complaint in accordance with this definition. See Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325 (1st Cir. 2009) (A motion to dismiss brought under Fed. R. Civ. P. Rule 12(b)(6) requires the court to "accept[] as true all well-pleaded facts in the complaint and draw[] all reasonable inferences in the plaintiffs' favor.").

To the extent that the Plaintiff intended to sue Defendants in their official capacity (if he did at all), Plaintiff's claims are dismissed pursuant to the doctrine of sovereign immunity.[3] Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991) ("neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action"). However, since the complaint may also fairly be interpreted as bringing claims against Defendants as individuals, it will hereinafter be read to allege claims against Defendants solely in their individual capacities.[4]

**B. Freedom of Speech**

---

[3] Plaintiff concedes that he is unable to sue the Commonwealth or the Trial Court in his responsive pleading. (Dkt. No. 17, Pltf. Mem. 4-5.)

[4] Defendant's argument, insofar as it pertains to Plaintiff's Fourth Amendment and assault and battery claims, also fails because officers may be held individually liable for their unreasonable conduct, which includes both direct use of excessive force, as well as failure to prevent another officer's use of excessive force in some situations. See Gaudreault v. Salem, 923 F.2d 203, 207 n.3 (1st Cir. 1990) ("An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under [42 U.S.C. § 1983] for his nonfeasance.").

In his complaint, Plaintiff states that Defendants "knew or should have known that they were depriving Plaintiff of clearly established" Constitutionally protected rights (Dkt. No. 1, Comp. ¶ 23), and that Defendants "retaliated against" Plaintiff "because he sought to exercise his right to free speech." (Dkt. No. 1, Comp. ¶ 28.) The court infers from the allegations that this alleged deprivation occurred soon after Plaintiff's disagreement with a clerk-magistrate. (Dkt. No. 1, Comp. ¶ 16-18.) Defendants argue this claim should be dismissed because "Plaintiff has not alleged sufficient facts to plausibly infer that the actions of [Defendants] were in retaliation against, or in any way motivated by the allegedly protected speech." (Dkt. No. 13, Deft. Mem. 5.)

Based upon his factual allegations, the court interprets Plaintiff's "Free Speech" claim as an assertion that Defendants retaliated against Plaintiff for attempting to exercise his First Amendment rights. Though the court acknowledges the possibility that additional facts may permit the necessary inferences for this claim to survive the motion to dismiss, the complaint does not survive in its current form. The court therefore agrees with Defendants and dismisses this claim without prejudice.

To prove a First Amendment retaliation claim, Plaintiff must show "(1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action." D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 43 (1st Cir. 2012). Since ultimate "determinations of motive and intent" are generally questions deemed to be suited for the jury, Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 34 (1st Cir. 1990), it follows that Plaintiff's complaint need only assert facts that raise retaliation as a plausible motive in order to survive this motion.[5] Shabazz v. Cole, 69 F. Supp. 2d 177, 197 (D. Mass. 1999) ("On a motion to dismiss for

---

[5] Circumstantial evidence suggesting a retaliatory state of mind may hinge on temporal proximity of a plaintiff's action and the defendant's allegedly resulting action, see, e.g., Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001) (observing that "the timing of the search raises an inference of retaliatory motive"), or on a "chronology of events" that may give

6

failure to state a claim, it is appropriate to infer a retaliatory state of mind from circumstantial evidence.").

However, even given this relatively lenient standard, and even assuming the veracity of all of Plaintiff's asserted facts, see Iqbal, 556 U.S. at 663, Plaintiff still has not sufficiently pled this claim because he has not put forth sufficient information to permit the inference that Defendants were even aware of Plaintiff's interactions with the court, the clerk's office, or his plan to readdress the matter with the Judge. Under these circumstances, Plaintiff must allege facts indicating that Defendants knew of the protected conduct in order to assert a plausible claim of First Amendment retaliation. Otherwise, the court cannot infer that such protected conduct motivated Defendants' subsequent actions. See Esposito, 675 F.3d at 41.

### C. Access to Courts

Plaintiff also alleges that Defendants intentionally "denied [him] access to a public courtroom and access to justice." (Dkt. No. 1, Comp. ¶ 30.) Defendants move to dismiss this claim, asserting that Plaintiff has not alleged sufficient facts regarding the potential success of his underlying claim. (Dkt. No. 13, Deft. Mem. 8.) The court agrees with Defendants and dismisses this claim without prejudice.

Citizens have a constitutional right to access state and federal courts. See Ellis v. Viles, 2010 WL 6465282, at *3 (D. Mass. Aug. 26, 2010). To state a claim for denial of access to the courts, the plaintiff must allege that the defendants took actions that hindered his efforts to pursue a legal claim. See id. at *4 ("[I]n order to survive a motion to dismiss a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions

---

rise to an inference that a defendant's conduct was motivated by retaliation for the plaintiff's action. See, e.g., Shabazz v. Cole, 69 F. Supp. 2d 177, 197 (D. Mass. 1999).

7

resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." (quoting Cancel v. Goord, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001)).

In Christopher v. Harbury, the Supreme Court set forth the requisite elements of a backward-looking denial of access to courts claim in the context of a motion to dismiss. See 536 U.S. 403, 415-416 (2002). To survive, the complaint must identify a "nonfrivolous," and "arguable" underlying claim that the plaintiff would have brought had it not been for the alleged denial of access. McIntyre v. United States, 336 F. Supp. 2d 87, 133 (D. Mass. 2004) (citing Harbury, 536 U.S. at 415). The complaint must also describe the defendant's acts that denied him access to the courts. Harbury, 536 U.S. at 415. Additionally, the complaint must identify a remedy that may be awarded that is unique to the denial of access claim. McIntyre, 336 F. Supp. 2d at 133 ("That is to say, the remedy must be unavailable in any suit that may yet be brought." (citing Harbury, 536 U.S. at 415)). And, most significantly, both the underlying claim and the unique remedy must be set out in the complaint in a manner sufficient to give fair notice to the defendant. Harbury, 536 U.S. at 416.

In his complaint, Plaintiff has failed to put forth any information regarding the merits of the claim he was pursuing in the Berkshire District Court when his right to "access to the courts" was allegedly violated. Even if this court assumes, arguendo, that Defendants' actions did prevent Plaintiff from obtaining an order which would have compelled the individual in question to appear on a future date, Plaintiff's complaint lacks sufficient facts for this type of claim to survive a motion to dismiss. See id. at 415-416. Specifically, the complaint does not identify (1) the particular claim that Plaintiff was pursing; (2) the unique remedy (relating to the litigation in question) that he desires; nor (3) facts from which this court might be able to infer that the underlying claim had merit. See id.; Ellis, 2010 WL 6465282, at *4.

**D. Assault and Battery and Fourth Amendment**

Defendants do not contest that "Plaintiff has pled sufficient facts for one to possibly infer that Hadley's alleged actions were unreasonable." (Dkt. No. 13, Deft. Mem. 16.) Instead, Defendants only argue that sufficient facts have not been pled to support the inference that McMahon's use of physical force was unreasonable. (Dkt. No. 13, Deft. Mem. 9.) Finding that Plaintiff's factual allegations pertaining to McMahon's use of force permit the inference that it may have been unreasonable, the court denies Defendants' motion to dismiss Plaintiff's assault and battery and Fourth Amendment claims against McMahon.

When an officer[6] has restrained the liberty of a citizen by means of physical force, a court may conclude that a seizure has occurred. Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). A seizure by an officer, however, does not violate the imperatives of the Fourth Amendment when the procedure employed by officers and its implementation are reasonable.[7] Lockhart-Bembery v. Sauro, 498 F.3d 69, 75 (1st Cir. 2007). Similarly, though Massachusetts law permits assault and battery claims against law enforcement officials who use excessive force in carrying out their duties, reasonable force is a valid defense to these claims as well. See Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir. 2010). Therefore, a court's "determination of the reasonableness of the force used under § 1983 controls [its] determination of the reasonableness of the force used under the common law assault and battery claims." See id.

In his complaint, Plaintiff claims that when he re-entered the courtroom in an attempt to correct a misunderstanding between himself, the judge, and the clerk-magistrate, McMahon

---

[6] Since court officers fall under the umbrella of law enforcement officials, the standards which govern the conduct of police officers also applies to Hadley and McMahon with equal force. See Commonwealth v. Hilton, 823 N.E.2d 383, 400 (Mass. 2005) (a court officer's job duties and official powers include attributes of law enforcement); Vining v. Commonwealth, 2004 WL 1049986, at *1 (Mass. Super. Ct. Apr. 28, 2004) ("Court officers are law enforcement officers").

[7] Though "not every push or shove" will reach the level required for an actionable unreasonable force claim, see Alexis v. McDonald's Rests. of Mass., Inc., 67 F.3d 341, 352 (1st Cir. 1995), the fact that a plaintiff's injuries are minimal does not necessarily entail a finding that the officers' actions were reasonable. See Baldwin v. Tessier, 2006 WL 753244, at *8 (D. Mass. Mar. 22, 2006).

"violently detained him," "held [him] by his left arm," and restrained Plaintiff while his other arm was twisted in a way that caused injuries. (Dkt. No. 1, Comp. ¶ 16-18.) Plaintiff additionally states that McMahon was "recklessly indifferent to Plaintiff's welfare and to the risk of causing him serious, debilitating injury," that she "knew or should have known that the manner in which [she] physically treated the plaintiff was likely to cause him serious bodily injury," and that, "[a]s a direct and proximate result of [her] acts and omissions, the Plaintiff suffered serious physical injury." (Dkt. No. 1, Comp. ¶ 21, 22, 24.)

Plaintiff's stated factual allegations do not provide any indication that mere verbal commands would have been insufficient to accomplish Defendants' goals, nor that Plaintiff engaged in any sort of provocation prior to his restraint, nor that he was a physical threat at any point during the incident. Therefore, under these circumstances, the court deems it plausible that any level of physical force might have been unreasonable. See id.; Sauro, 498 F.3d at 75. For this reason, as all plausible inferences must be resolved in Plaintiff's favor at this stage, the very fact that McMahon used physical force renders Plaintiff's factual allegations asserted in support of his Fourth Amendment and assault and battery claims sufficient.[8] See Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325 (1st Cir. 2009) (A motion to dismiss brought under Fed. R. Civ. P. Rule 12(b)(6) requires the court to "accept[] as true all well-pleaded facts in the complaint and draw[] all reasonable inferences in the plaintiffs' favor.").

### E. Due Process

Plaintiff also asserts that Defendants' actions deprived him of "his right to substantive and procedural due process." (Dkt. No. 1, Comp. ¶ 34 (emphasis added).) In their memorandum, Defendants contest the "substantive due process" aspect of Plaintiff's claim by arguing that

---

[8] The court notes Defendants' acknowledgement that "the reasonableness of force used by a defendant is not normally adjudicated in a motion to dismiss." (Dkt. No. 13, Deft. Mem.16.) The court agrees with Defendants' assessment. See Griffin v. Crippen, 193 F.3d 89, 91-92 (2nd Cir. 1999) (error to determine that use of force was reasonable as a matter of law).

10

substantive due process is not the correct constitutional theory to support Plaintiff's allegations. (Dkt. No. 13, Deft. Mem. 12.) Defendants are correct, and Plaintiff's substantive due process claim is dismissed without prejudice. See Graham v. Connor, 490 U.S. 386, 395 (1989) (holding that all claims against law enforcement officers for unreasonable use of force, in the course of a seizure of a free citizen, should be analyzed under the Fourth Amendment rather than under a "substantive due process" approach).

As it currently stands, the court deems Plaintiff's procedural due process claim to be facially inadequate because it does not explicitly identify how this right to due process was infringed. See Air Sunshine, Inc. v. Carl, 663 F.3d 27, 37 (1st Cir. 2011) ("[m]ere broad conclusory allegations of wrongdoing in the complaint are not a substitute for a meaningful factual context") (internal quotations and citations omitted). Defendants, however, did not directly address Plaintiff's procedural due process claim in their submissions.[9] (Dkt. No. 1, Comp. ¶ 34.). For that reason alone, the court does not dismiss Plaintiff's procedural due process claim at this time.[10] See Wyatt v. City of Boston, 35 F.3d 13, 14-15 (1st Cir. 1994) (asserting that courts should not dismiss cases under Rule 12(b)(6) motions, sua sponte, before plaintiffs are afforded notice).

**F. Massachusetts Civil Rights Act**

In his Complaint, Plaintiff brings Massachusetts Civil Rights Act ("MCRA") claims under Mass. Gen. Laws. c. 12, § 11I. (Dkt. No. 1, Comp. ¶ 38-39.) In support of these claims, Plaintiff begins by "repeat[ing] and realleg[ing]" the complaint's earlier-stated factual allegations. (Dkt. No. 1, Comp. ¶ 38.) Plaintiff then claims that "Hadley and McMahon, through threats, intimidation and

---

[9] The court notes, however, that Plaintiff did not separate his procedural and substantive due process claims into two different counts, or even into two different paragraphs. (Dkt. No. 1, Comp. ¶ 34.)

[10] The court's opinion regarding the current facial inadequacy of Plaintiff's "procedural due process" claim should be interpreted by Plaintiff as constituting the requisite notice which must be provided prior to sua sponte dismissal. See Wyatt v. City of Boston, 35 F.3d 13, 14-15 (1st Cir. 1994). As with all other claims dismissed pursuant to this order, Plaintiff may subsequently pursue an appropriate procedural avenue in order to address his claim's inadequacies in this regard.

11

coercion, deprived the Plaintiff of civil rights guaranteed by Articles XI, XIV and XVI of the Declaration of rights to the Constitution of the Commonwealth and by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States." (Dkt. No. 1, Comp. ¶ 39.) Since these statements are insufficient to meet Plaintiff's burden, the court finds that Plaintiff has failed to state a MCRA claim upon which relief can be granted.

The Massachusetts Supreme Judicial Court ("SJC") has explained that the MCRA is not intended to create a "vast constitutional tort," thereby strictly limiting its application to instances where the derogation of secured rights occurs by "threats, intimidation or coercion."[11] Haufler v. Zotos, 845 N.E.2d 322, 335 (Mass. 2006) (internal quotations and citations omitted); accord Goddard v. Kelley, 629 F. Supp. 2d 115, 128 (D. Mass. 2009). Even "direct deprivation" of a plaintiff's rights is not actionable under the act unless it is accomplished by means of one of these three constraining elements. Buster v. George W. Moore, Inc., 783 N.E.2d 399, 409 (Mass. 2003).

The Erie Doctrine requires this court to apply state substantive law and federal procedural law when exercising diversity or supplemental jurisdiction. See South Middlesex Opportunity Council, Inc. v. Town of Framingham, 2008 WL 4595369, at *10 (D. Mass. Sept. 30, 2008). Therefore, though Plaintiff brings these claims under Massachusetts law, "state pleading requirements, so far as they are concerned with the degree of detail to be alleged, are irrelevant" for these purposes. Andresen v. Diorio, 349 F.3d 8, 17 (1st Cir. 2003). Accordingly, since the court is exercising supplemental jurisdiction in this case to evaluate the merits of Defendants' argument that Plaintiff has not sufficiently pled his claims, the court will evaluate the sufficiency of Plaintiff's

---

[11] A "threat" means the "intentional exertion of pressure to make another fearful or apprehensive of injury or harm." Goddard v. Kelley, 629 F. Supp. 2d 115, 128 (D. Mass. 2009) (quoting Planned Parenthood League of Massachusetts, Inc. v. Blake, 631 N.E.2d 985 (Mass. 1994)). "Intimidation" means putting a person in fear for the purpose of compelling or deterring his or her conduct. Goddard, 629 F. Supp. 2d at 128. "Coercion" means application of physical or moral force to another to constrain him to do against his will something he would not otherwise do. Id. Overall, the MCRA contemplates a two-part sequence: (1) the defendant threatens, intimidates, or coerces the plaintiff, in order to (2) cause the plaintiff to give up something that the plaintiff has the constitutional right to do. Id. ("for example, the statute would apply where a defendant (1) threatened to beat up the plaintiff if (2) the plaintiff exercised his right to vote").

MCRA claim pursuant to federal pleading standards.[12] See Tomaselli v. Beaulieu, 967 F. Supp. 2d 423, 434 (D. Mass 2013) (applying federal pleading standard to MCRA claim over which the court exercised supplemental jurisdiction).

Under the standard articulated by the Supreme Court and the First Circuit, Plaintiff's complaint does not survive Defendants' motion to dismiss for two reasons, either one of which is dispositive. See Twombly, 550 U.S. at 570. First, Plaintiff has not articulated exactly which specific rights within the named articles and amendments he believes to have been violated by Defendants' conduct. See id. Further, and perhaps more significantly, Plaintiff has not sufficiently articulated precisely how he believes Defendants have violated rights under the named articles and amendments by threats, intimidation, and coercion.[13] See id.

### G. Prayers for Relief against Hadley and McMahon

Plaintiff has requested compensatory damages, punitive damages, attorneys' fees, declaratory and injunctive relief to forbid Hadley and McMahon from interfering with Plaintiff's rights, and declaratory and injunctive relief requiring Hadley and McMahon to undergo training on appropriate conduct. (Dkt. No. 1, Comp. ¶ A-D, F, G.) Defendants argue that certain portions of Plaintiff's prayer for relief against Hadley and McMahon should be dismissed. Defendants premise this argument upon an assumption the court will dismiss all claims against McMahon, as well as a dismissal of virtually all claims against Hadley. However, all of Defendants' dismissal requests have not been allowed.

---

[12] The court notes that this is a different approach than the District of Massachusetts took in Canney v. City of Chelsea, 925 F. Supp. 58, 70 (D. Mass.1996), where it decided to apply the pleading standard articulated by the Massachusetts Supreme Judicial Court in Hobson v. McLean Hospital Corp. See 522 N.E.2d 975, 978 (Mass. 1988); see also Lecrenski Bros. v. Johnson, 312 F. Supp. 2d 117, 122-123 (D. Mass. 2004) (noting that it was not "convinced that it should apply Hobson's state-law based heightened pleading standard to MCRA claims brought in this federal forum").

[13] Though this Court's approach differs from applied by the District of Massachusetts in Canney, as discussed above, its conclusion is the same. See Canney, 925 F. Supp. at 70 ("mere recitals of boilerplate claims of threats, intimidation, or coercion do not meet the requirements of Massachusetts civil rights pleading" (internal quotations omitted)).

13

Defendants' motion to dismiss some of Plaintiff's requests for relief against Hadley and McMahon is therefore denied.

## H. "Declaratory and Injunctive Relief" against the Commonwealth

Defendants argued that all claims against the Commonwealth and the Trial Court must be dismissed. (Dkt. No. 13, Deft. Mem. 3-5.) Following receipt of Defendants' motion, Plaintiff conceded all requests for relief against the Commonwealth and the Trial Court, with the exception of claims of "declaratory and injunctive relief" and attorneys' fees. (Dkt. No. 17, Pltf. Mem. 4-5.) Specifically, with respect to "declaratory and injunctive relief" against the Commonwealth and the Trial Court, Plaintiff has requested that the court "order[] the Commonwealth, acting by and through the Trial Court, to provide such training as it deems appropriate to Hadley and McMahon to educate them…"[14] (Dkt. No. 1, Comp. ¶ E.) The court grants Defendants' motion to dismiss these remaining requests for relief against the Commonwealth and the Trial Court.

"A plaintiff may seek prospective injunctive relief against a state official, but may not obtain such relief against a state or its agency because of the sovereign immunity bar of the Eleventh Amendment."[15] Poirier v. Mass. Dep't of Corr., 558 F.3d 92, 97 n.6 (1st Cir. 2009). Similarly, the doctrine of sovereign immunity also bars the recovery of attorneys' fees absent express waiver. United States v. Horn, 29 F.3d 754, 761 (1st Cir. 1994) ("[T]he proposition that sovereign immunity bars the recovery of attorneys' fees has become ensconced at the circuit level.").

Between Plaintiff's concessions and this ruling, all currently pending claims against the Commonwealth and the Trial Court in this case are dismissed.

---

[14] Under Count 9, entitled "Declaratory and Injunctive Relief," Plaintiff informs the court that the Trial Court has not transferred Hadley or McMahon away from the Berkshire District Court, and that the trial Court has also not "caused Hadley or McMahon to undergo any training designed to prevent them from depriving citizens of their civil rights." (Dkt. No. 1, Pltf. Comp. ¶ 49-50).

[15] It follows that the court may order Hadley and McMahon to attend certain trainings, assuming they exist; however the court may not order the Commonwealth or the Trial Court to hold these trainings if they do not do so already. See Poirier v. Mass. Dep't of Corr., 558 F.3d 92, 97 n.6 (1st Cir. 2009).

14

## V.     Conclusion

For the reasons set forth above, Defendants' motion to dismiss (Dkt. No. 12) is granted in part and denied in part. At the outset, Plaintiff's complaint will hereinafter be interpreted as asserting claims against Defendants only in their individual capacities. Additionally, all claims against the Commonwealth and the Trial Court are also dismissed without prejudice (including, but not limited to, Count 9).

Plaintiff's "Freedom of Speech" (Count 1), "Access to the Courts" (Count 2), and Massachusetts Civil Rights Act (Count 6) claims are dismissed without prejudice. To the extent that Plaintiff has asserted a substantive due process claim (Count 4), it is dismissed without prejudice. Plaintiff's procedural due process claim (Count 4) survives, as Defendants have not directly contested it.

Plaintiff has conceded his conspiracy claim (Count 5) and his Massachusetts Torts Claims Act claim (Count 7), and the court therefore dismisses these claims without prejudice.

Defendants' motion is denied, insofar as it requests dismissal of Plaintiff's Fourth Amendment (Count 3) and assault and battery (Count 8) claims. Counts 3 and 8, therefore, survive in their current form. Finally, the court also denies Defendants' motion to preclude certain types of relief against Hadley and McMahon.

It is So Ordered.

    /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge